October 22, 2015

Mr. Abel Acosta, Clerk
Court Of Criminal Appeals Of Texas
P.O. BOX 12308
Capitol Station
Austin, TX   78711

RE: EX PARTE HONISH

Mr. Acosta:

Please find the enclosed Traverse to the trial court's conclusions adopted from the State.

I would ask that you please file this with the Court for it to consider in its review of my Art. 11.07 habeas corpus application.

Thank you for your assistance in this matter.

Respectfully submitted,

Mark F. Honish
TDCJ# 1745461
Estelle Unit
264 FM 3478
Huntsville, TX   77320

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 26 2015

Abel Acosta, Clerk

IN THE CRIMINAL COURT OF APPEALS FOR
THE STATE OF TEXAS

EX PARTE,                          §
                                   §
MARK F. HONISH                     §   CAUSE NO: F-2007-2063-E (WHC 3)
                                   §
                                   §
                                   §

APPLICANT'S TRAVERSE TO TRIAL COURT'S ADOPTING
STATE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW MARK F. HONISH, APPLICANT pro se and files his Traverse To Trial Court's Adopting As Its Own The State's Proposed Findings Of fact And Conclusions Of Law.

## I. OVERVIEW

Applicant received the Trial Court's Order adopting the State's Proposed Findings Of Fact And Conclusions Of Law on October 20, 2015. Applicant argues the trial court has disregarded the documented facts in the record that support applicant's claims and has ruled based on an unreasonable determination of the facts in light of the evidence presented, and contrary to Texas and Federal Law.

## II. ARGUMENTS IN SUPPORT

STATE'S CONCLUSIONS AND APPLICANT'S RESPONSE:

1. "Applicant's mere assertions are not sufficient to prove his grounds."

Contrary to the State's conclusion, Honish has made claims that are supported within the record, and the relevant Reporter's Record is cited in each ground to support his claim. These are not mere assertions, and a reading of the cited transcripts supports each claim, and shows them to be not just mere assertions.

2. "Applicant's first and third grounds fail because these claims could have been, and most were, addressed in his direct appeal."

Though applicant's first and third grounds were raised on direct

1

appeal, they are still cognizable at habeas. The appellate court improperly side-stepped ruling on the legality of the first warrantless search by police, by finding the second warrantless search of Honish's truck after he was stopped, was an "Independent Source" of the same evidence seen by police in their first warrantless search. Honish again raises the legality of the first warrantless search within the curtilage of his home at habeas, because he was denied a full and fair hearing of his properly preserved and raised claim of a warrantless search by police. The appellate court was required to rule on the legality of this first warrantless search. Once a defendant has made an initial showing for suppressing evidence on an alleged Fourth Amendment violation, the burden of proof shifts to the State, where it is required to establish that the search or seizure was conducted pursuant to warrant, or was reasonable. Ford v. State,158 SW 3d 488(Tx.cr.App.2005); U.S. v. Wilson,36 F.3d 1298 (5th Cir.1994). Police officers testify that there was a warrantless search in the instant case,(4 RR:42-48,119; 6 RR:203-221) this shifts the burden of proof to the State to establish probable cause and reasonableness of the warrantless search, which it has failed to do in the instant case. Officers testify they had no exigent circumstances or probable cause to justify their first warrantless search. (4 RR:114; 6 RR:196).

In Rawlings v. Kentucky,448 U.S. 98,104(1980), the Court held that in order to prevail on a Fourth Amendment claim, the complainant need prove only that the search or seizure was illegal, and that it violated his reasonable expectation of privacy in the item or place at issue. Honish's claim meets the standard set in Rawlings. The appellate court cannot side-step a properly raised Fourth

2

Amendment claim as in the instant case. The State **must** establish some statutory or legal authority under which it acted in the warrantless search; in the absence of such authority, a court **must** conclude, without any further consideration, that the search or seizure was unconstitutional. U.S. v. Ramsey,431 U.S. 606(1977); U.S. v. Odutayo,406 F.3d 386(5th Cir.2005). For the appellate court to find that the second warrantless search was an Independent Source of the same evidence from the first warrantless search, the court was required to first, rule on the legality of the first warrantless search, and then conduct an attenuation of taint analysis to determine if the second search was free of taint from the first. Brown v. Illinois,422 U.S. 590(1975); Johnson v. State,871 SW 2d 744,751(Tx. Cr. App.1994). The court failed to conduct any attenuation of taint analysis as required under Brown and Johnson.

Due process requires that the appellate court must rule on the legality of the first warrantless search, and cannot turn a blind eye to properly raised constitutional violations. Honish was denied a full and fair hearing on this claim, therefore it is cognizable at habeas, and subject to plain error review under U.S. v. Olano,507 U.S. 725(1993).

Honish's Ground Three claim raises the trial and appellate court's failure to uphold Article 38.23(a) of Tex. C.C.P. Under Art. 38.23, once a "casual connection" between the illegality, which in the instant case is the first warrantless search, and the evidence is established, the evidence must be excluded. Evidence seen in the first warrantless search was used as the basis by police to stop and arrest Honish. (4 RR:50-63) The warrant affiant testifies he used information gleaned from the first warrantless search in his warrant

3

affidavit. (4 RR:132-133) Thus, under Art. 38.23, there is a proven casual connection between the first warrantless search, and the stop and arrest of Honish, as well as proving the casual connection to the search of honish's home and truck pursuant to warrant. The evidence seen, and seized from these searches was required to be suppressed under Article 38.23(a).

Though Honish did not raise Ground Three on his direct appeal, it is nonetheless still cognizable at habeas because, Art. 38.23 is a legislative directive designed to safeguard Fourth Amendment protections, and to act as a deterent to law enforcement misconduct. In **Ex parte Tovar**,901 SW 2d 484,485(Tx.Cr.App.1995) and **Ex parte Douthit**,232 SW 3d 69(Tx.Cr.App.2007), this Court held that the failure to adhere to a legislative directive or mode of proceeding designed to safeguard a constitutional right will likewise be cognizable at habeas corpus when the omission results in the denial of a constitutional protection. Therefore, Honish argues his Ground Three claim is cognizable at habeas corpus.

3. "Applicant has not shown that any alleged false or perjured testimony was material. Further, even if the testimony was material, applicant has not shown harm."

The State filed its Findings of Fact and Conclusions Of Law with the trial court on September 4, 2015. Honish's Brief In Support of his 11.07 Application was not filed with the court until September 11, 2015. Honish believes that neither the State, or the trial court read his brief in support before making the above conclusion. Instruction Number 6 on the 11.07 application states to briefly summarize the facts in the application. Instruction Number 7 states to make legal arguments and citations in a separate memor-

4

andum, which is exactly what Honish did. The facts, are that a comparison of Ranger Murphree and Detective Sullivan's bond hearing testimony in 2009, to their suppression and trial testimony in 2011, shows material and relevant portions of their 2011 testimony to be perjured. The Reporter's Record location of the relevant testimony for comparison was cited in the application. The materiality of this perjured testimony was argued, in detail, in Honish's Brief In Support. Honish stating the perjured testimony was material on the application, would not have been a fact, but only his subjective conlusion. Therefore, the materiality of the perjured testimony was raised and argued in the Brief In Support, as it was supposed to be. The same argument applies to showing the harm of the perjured testimony, as it was clearly shown, and argued in the brief.

It is generally self evident that when police officers, who were members of the prosecution team, give perjured testimony at a suppression hearing about their search and seizure activities, that directly results in the court denying the motion to suppress, based on that perjured testimony, that the perjured testimony was indeed material, and that it caused harm. In the instant case, as argued in the Brief, the perjured testimony was material as these officers were the only two witnesses to testify at suppression, and their perjured testimony misled the court, and resulted in the court's denial of the motion to suppress. This harmed Honish by allowing evidence from the unlawful searches and seizures, the heart of the State's case, to be admitted into evidence, ⬛ greatly contributing to his conviction. These two officers repeated their perjured testimony throughout the trial to establish the essential elements of the offense before the jury, intentionally misleading them, which harmed

5

Honish. The false and perjured testimony of these officers goes directly to their credibility with the jury and the court, and was therefore material.

The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. Napue v. Illinois, 360 U.S. 264(1959). The officers perjured testimony is material, and it harmed Honish. This was clearly shown, argued, and supported by facts in the Brief.

4. "Applicant's grounds based on alleged trial errors are not cognizable in a writ of habeas corpus."

Presumably, the State is refering to applicant's Ground Four and Ground Six claims. Applicant's Ground Four claim that the trial court erred and abused its discretion in refusing to issue an Art. 38.23 jury instruction, is in fact cognizable at habeas. Appellate counsel raised this ground on direct appeal, but failed to make any argument or cite case law in support of, in his Brief. Honish raises this in his Ground Eight Ineffective Assistance of Appellate Counsel claim. Issues otherwise precluded by a failure to object, or in the instant case, to make an argument, may be reached if the applicant shows ineffective assistance of counsel. Ex parte Brown, 158 SW 3d 449,457(Tx.Cr.App.2005). Furthermore, Art. 38.23 is a legislative directive, and a jury instruction was mandatory under Art. 38.23 in the instant case. The failure to adhere to a legislative directive by the court, resulted in a denial of a constitutional protection in the instant case, and is therefore cognizable at habeas. Ex parte Tovar, 901 SW 2d 484,485(1995); Ex parte Douthit, 232 SW 3d

6

69(Tx.Cr.App.2007).

Honish's Ground Six claim, that the trial court erred in failing to conduct a balancing test under Rule 403, of a written statement to police by Gordon Skinner, before allowing it into evidence, is also cognizable at habeas. Article 11.07 is the appropriate vehicle for testing due process violations in Texas. **Ex parte Brandley**, 781 SW 2d 886,887(Tx.Cr.App.1989). Claims involving jurisdictional defects or invoking fundamental constitutional rights may be raised again at habeas, even if raised and rejected on appeal. **Ex parte Goodman**,816 SW 2d 383,385(Tx.Cr.App.1991); **Ex parte Shields**,550 SW 2d 670(Tx.Cr.App.1979). In **Ex parte Bravo**,702 SW 2d 189(Tx.Cr.App. 1982), the Court ruled that "On original submission, that error rising to the level of constitutional error may be raised for the first time in a post conviction application for writ of habeas corpus, even though not raised on direct appeal. Id. at 190. Therefore, applicant would argue the State's conclusion in its finding that these claims are not cognizable at habeas, is in error.

5. "Applicant fails in his Fifth ground by only making mere accusations that there was prosecutorial misconduct."

Applicant's Brief In Support documents, and argues the instances of prosecutorial misconduct raised by applicant. It is not, as the State contends without reading the Brief, "mere accusations." First, the prosecutor's knowing, and intentional use of perjury is well documented in the Brief in ground two and five. The officers who perjured themselves were members of the prosecution team, therefore their perjured testimony is imputed to the prosecution. **Ex parte Castellano**,863 SW 2d 476(Tx.Cr.App.1989); **Giglio v. U.S.**,405 U.S. 150(1972). These officers and the prosecutor knew their 2011 tes-

7

timony was perjured compared to their previous 2009 sworn testimony. Yet, neither the prosecutor, or the officers made any attempt to correct the perjured testimony, or bring it to the attention of the court. It is irrelevant whether or not the prosecutor says he had actual knowledge of the perjured testimony, it is imputed to him, and he used it throughout the trial, intentionally.

The prosecutor coerced State's witness Charlene Elmore into changing her testimony from her written statement to police to reflect his view of the facts. The prosecutor elicited knowingly false testimony from Elmore to lead the jury to believe Elmore had seen Honish's truck at the crime scene, when she had not. The prosecutor met with Elmore the day before her testimony and showed her a picture of Honish's truck. (8 RR:31-33) Elmore testifies the prosecutor talked to her about how she might be confused. (8 RR:31) Elmore testifies her trial testimony describing the truck she saw came from the picture the prosecutor showed her, but was not what she saw on the night in question. (8 RR:31-32). These are not mere accusations. The prosecutor's conduct regarding Elmore constituted tampering with a witness, suborning perjury, and obstruction of justice.

The prosecutor did falsely state in open court that a potential witness was not under State subpoena, when he knew this to be false, and that the witness had been interviewed by the State. The prosecution did in fact allow Flower Mound Detective to intentionally, and in bad faith, release Honish's truck, which was material, exculpatory evidence. This was done without the required order from the court, and in violation of all protocols and policies regarding the release of evidence. The arguments in the Brief cite relevant trial transcripts to support the claims, an Evidentiary hearing would be

required to compel the District Attorney's office to testify to why Honish's truck was released, however all request for Evidentiary Hearings has been denied so far by the courts.

6. "Applicant's mere assertions are not sufficient proof of his claims of ineffective assistance of counsel, and he has not presented specific facts showing that his counsel was deficient."

Applicant argues his claims of ineffective assistance of counsel in grounds seven and eight of his Brief. The alleged deficient performance is on the application, the argument as to why performance was deficient, and the prejudice caused by the deficient performance, are in applicant's brief. The State failed to read applicant's Brief before claiming they are just mere assertions, and their Conclusion in this case is without merit and not supported by anything other than the State's mere assertions.

7. "Applicant has not shown any prejudice from his counsel's alleged errors, much less the prejudice required under an ineffective assisatnce of counsel claim, and thus applicant fails to prove his seventh and eighth grounds."

Applicant in his Brief In Support, has clearly stated in each of his ineffective assistance of counsel claims in Grounds Seven and Eight, how counsel's deficient performance prejudiced him, and that counsel's performance was deficient. Applicant has met both prongs of **Strickland** in each claim.

8. "Applicant has not met his burden of proof in any of his grounds, as he has not shown sufficient specific facts that, if proven to be true, might entitle him to relief."

Applicant, being a pro se applicant, has asked the court to interpret his application and Brief liberally per **Haines v. Kerner,**

9

404 U.S. 519(1972). This Brief is not at the level of a trained lawyer. However, applicant has shown specific facts in the record, that the record shows to be true. The intentional and knowing use of perjury in ground two is a clear example of this, as is the prosecutorial misconduct with witness Charlene Elmore. Applicant has met his burden of proof under this Court's own rulings, to show he is entitled to relief. The State's bare conclusory allegations and mere assertions adopted by the trial court are in error, and not supported by the information presented in applicant's brief and application.

Applicant respectfully asks this Court to conduct its own de novo review of the facts, and make its own conclusions of law based on the applicant's Brief, and the record cited therein.

Respectfully submitted,

_Mark F. Honish_
Mark F. Honish, pro se
TDCJ# 1745461
Estelle Unit
264 FM 3478
Huntsville, TX   77320

Mailed this 22nd day of October, 2015.

_Mark F. Honish_
Mark F. Honish

10